## Testa v. Williams

C.P. of Allegheny County, no. GD 98-19338.

*J. Louis Chomas,* for plaintiff.
*James C. Heneghan,* for defendant.

FRIEDMAN, *J.,* November 30, 2000—

## INTRODUCTION

Plaintiff has filed a motion to enforce settlement which was orally granted as to enforcement and which included the still pending demand for counsel fees pursuant to 42 Pa.C.S. §2503, based on conduct of defendants' attorney which was allegedly "in bad faith, obdurate, or vexatious." In addition, during a hearing on this issue, defendants' attorney made an oral motion for the award of counsel fees to defendants, a motion the court orally denied on the same day, October 6, 2000. The total amount of fees claimed by plaintiff is $2,534, of which $1,417 is for extra work done during the period of April 24, 2000 to June 26, 2000, and $1,117 is for extra work done from

June 26, 2000 to October 6, 2000, the date of the hearing on the motion. At oral argument on the motion, counsel for defendants indicated that he had no objection to the *amount* of the attorney fee claim. Rather he objects to there being any award of fees at all, because, as set forth in his response to plaintiff's motion to enforce a settlement agreement, defendants' attorney vigorously denies that he did anything more than work very hard for his clients.

Although not specified by plaintiff, it appears that subsection (7) or, possibly, (9) would be applicable to her motion. Those subsections are quoted in full below:

"Section 2503. Right of participants to receive counsel fees.

"The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter: . . .

"(7) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter. . . .

"(9) Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith."

## DISCUSSION

It cannot be doubted that there were many "failures to communicate" as counsel and the court tried first to define disputed areas and, later to settle the matter amicably. At different times, the court felt that either defendants themselves or their attorney were inexplicably

being somewhat unreasonable, and the court attributed this to a lack of practicality that was possibly related to their failure to adequately investigate or understand the law they thought was applicable.[1] This was almost as trying for the court as it was for plaintiff, who lost one buyer because of defendants' recalcitrance, the *legal* basis for which was never clearly articulated.

Eventually, on December 14, 1999, a settlement in principle was reached during negotiations conducted by the undersigned, and on December 29, 1999, defendants' counsel sent a letter to plaintiff's counsel indicating that defendants agreed to a settlement whose terms were set forth therein. It is only the events *after* this that the court would consider relevant to the plaintiff's instant motion.[2] Those events and related documents are listed below, in chronological order:

December 14, 1999: Settlement conference held before the undersigned, resulting in alternate proposals that the court expected defendants' counsel to discuss with his clients. The court's notes of December 14, 1999 indicate that plaintiff at a minimum sought the right to part two cars, with access to run with the land, for which plaintiff would be willing to pay $3,200. The court's notes also show that the defendant suggested an outright sale

---

1. The case involved complex factual issues regarding abandonment of railway easements, failure to open dedicated roadways, quitclaim deeds, and adverse possession. The value of the real estate in question was quite small compared to the expense a full trial of those issues would generate for each of the parties.

2. Plaintiff's motion suggests that the post-December 14, 1999 conduct was the final straw for plaintiff's counsel, rather than being the first instance of improper conduct. The court is sympathetic to their ordeal, but notes that it is not a unique one.

of the same area to the stairs, including an easement into the driveway, for $6,500 plus transfer taxes and closing costs, and that defendants also proposed that the fence on the left would be removed. The court's notes also show that a prior $51,000 contract for the sale of plaintiff's property to a third party had fallen through, because of the delay in resolving the captioned matter. There had also been discussions between counsel and the court before December 14, 1999 about the need for borough approval of the subdivision of defendants' property which was legally required before the parcel in question could be transferred.

December 29, 1999: Letter from defendants' counsel to plaintiff's counsel, indicating that defendants had

January 7, 2000: Letter from plaintiff's counsel to defendants' counsel stating "the proposal set forth [in defendants' December 29, 1999 letter] is acceptable." The letter also clarified the phrase "all costs" and stated the visual boundaries of the parcel. (Defendants made no written or oral response objecting to or correcting the clarifications that accompanied plaintiff's acceptance of the terms set forth in defendants' December 29, 1999 letter.)

February 4, 2000: Telephone conversation between counsel. The nature of the conversation is unclear as each attorney has a different understanding of what was said. It is clear, however, that *neither* attorney regarded this conversation as modifying the settlement that had previously been reached.

March 22, 2000: Plaintiff's counsel picked up the completed subdivision plan from the surveyor, which had been ordered shortly after the February 4, 2000 conversation. The plan was on mylar rather than paper, and thus was both expensive and unfoldable.

March 30, 2000: Plaintiff's counsel hand-delivered copies of the subdivision plan (also done on unfoldable mylar) to the office of defendants' counsel along with a letter of instruction dated March 27, 2000.

April 5, 2000: Letter transmitting to plaintiff's counsel a copy of defendants' motion for continuance of the trial that had been scheduled to begin in this matter on April 17, 2000. Defendants had agreed to present this motion, which was uncontested, because the settlement which the parties had reached still needed the approval of Elizabeth Borough.

April 17, 2000: Letter from plaintiff's counsel to defendants' counsel, advising him of the "approaching borough council meeting [set for April 25, 2000] and the need to expedite the matter." (This letter does not appear to have been offered into evidence, but the court believes there is no dispute as to its existence or contents.)

April 24, 2000: Letter from another attorney at defendants' counsel's law firm to plaintiff's counsel, requesting, the day before the subdivision plan was to be presented to the borough, that the plan be changed in four respects. This was the first indication to plaintiff that defendants wanted the mylar drawing re-done. It is also defendants' first request that plaintiff draft an easement contract. It also appeared to be an attempt to change the extent of the easement plaintiff would be given along with the parcel it was purchasing in fee.

May 3, 2000: Letter from plaintiff's counsel to defendants' counsel stating that the terms of the April 24, 2000 letter did not comport with the agreement between the parties.

May 8, 2000: Letter from the other attorney at defendants' counsel's law firm asserting that no change to the settlement would result from her demands.

June 27, 2000: Plaintiff presented the motion to enforce settlement which included the instant demand for counsel fees. (The motion was inadvertently not clocked and docketed at the time, an omission which was recently corrected.) Defendants also made an oral motion for counsel fees, which was orally denied. As previously indicated, the court granted the plaintiff's motion to enforce immediately after holding a hearing on October 6, 2000. It also denied defendants' oral motion for counsel fees on that date, but took plaintiff's motion for counsel

fees under advisement. The court also gave defendants an opportunity to respond further in writing to the counsel fee issue. The reasons for enforcing the settlement were set forth on the record at the time and will not be further discussed herein.

June 28, 2000: The court entered an order granting plaintiff's motion in part, memorializing the denial of defendants' oral motion, and setting a schedule for the decision of plaintiff's demand for counsel fees.

As to the instant dispute regarding counsel fees, it is well-settled that decisions in such matters are highly fact-specific. In the instant case, the facts involving the finalizing of the settlement, including obtaining the approval of the borough, indicate that plaintiff and defendants had a final, enforceable agreement shortly *after* January 7, 2000. Defendants made no objection thereafter to the description of the visible boundaries of the parcel to be transferred from defendants to plaintiff, nor did defendants state anything further about the limits of the easement beyond that originally set forth in their letter of December 29, 1999. In addition, defendants' counsel was always aware that, if a settlement were reached, plaintiff would need time to prepare plans for the borough approval process.

As of March 30, 2000, defendants' counsel knew, or should have known from the mylar, which portion of their driveway was to be covered by an easement. Defendants' counsel also knew, or should have known, that the documents required for borough approval would not necessarily be those required for the closing of the sale and the granting of an easement. In fact, counsel's conduct in not raising any immediate question about the mylar confirms he knew this difference.

The court concludes that the belated letter from the other attorney in defendants' counsel's office, demanding various changes to the mylar the day before the application for the subdivision was to be presented to the borough council, created unjustified and vexatious delay in the execution of the settlement and resulted in extra expense to plaintiff who had to seek court intervention because of defendants' counsel's imposition of conditions on April 24, 2000, apparently different from those agreed to in January 2000.

This may not be "bad faith" on the part of defendants' counsel, but it certainly reflects his confusion of the subdivision approval process with the final closing of the sale. This confusion caused great inconvenience to the court and unnecessary expense to plaintiff. It clearly constitutes "dilatory, obdurate and vexatious conduct during the pendency of [the instant matter]." Section 2503(7) applies. "Bad faith" is relevant only to the award of counsel fees for the *commencement* of an action. See section 2503(9).

## CONCLUSION

The counsel fees of plaintiff for the period from April 24, 2000 through October 6, 2000, the date of the decision on the motion to enforce settlement, must therefore be awarded to plaintiff. See order filed herewith.

## ORDER

And now, to-wit, November 30, 2000, for the reasons set forth in the attached memorandum in support of order, it is hereby ordered that plaintiff is awarded the sum of $2,534 in counsel fees pursuant to 42 Pa.C.S. §2503(7).